IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ELIZABETH CAROL KUTER, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:20-CV-1980-N |
| | § | |
| PEDIATRICIANS OF DALLAS, P.A., | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

This Order addresses Defendant Pediatricians of Dallas, P.A.'s ("POD") motion for summary judgment [17].[1]  After review of the record, the Court finds that Plaintiff Elizabeth Kuter has failed to raise a genuine dispute as to a fact necessary for her to establish a prima facie case in each of her employment-discrimination claims. Accordingly, the Court grants the motion for summary judgment in its entirety.

### I. THE HISTORY OF THE PARTIES' RELATIONSHIP

This case arises from the termination of a long-serving employee of a pediatrics practice.  Kuter started with POD in 1999 and served as the practice's office manager from 2002 until her dismissal in 2018.  Pl.'s Compl. ¶ 5 [1].  Kuter challenges the propriety of that action under two federal employment laws, the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 623 *et seq.* ("ADEA") and Title VII of the Civil Rights Act of

---

[1] POD has also filed a motion to strike [25] portions of Kuter's brief in response to its motion for summary judgment.  To the extent the Court does not rely on assertions that POD asks the Court to strike, the motion is granted.

ORDER – PAGE 1

1964, 42 U.S.C. § 2000e *et seq.* ("Title VII").  *Id.* ¶¶ 16–23, 25–30.  At the time POD terminated her, Kuter was fifty-one years old.  *Id.* ¶ 17.  She is white.  *Id.* ¶ 25.  Shortly before firing Kuter, POD hired Toni Grant, a thirty-two-year-old, black woman.  *Id.* ¶ 12.  POD informed Kuter that it hired Grant to manage the practice's human resources ("HR") obligations, a role it believed complemented Kuter's higher-level, management-focused responsibilities.  Def.'s Br. Supp. Mot. Summ. J. 6 [18].  Kuter contends that POD hired Grant to replace her.  Hence, Kuter argues, POD's decision to terminate her and replace her with an employee from outsider her protected classification demonstrates age discrimination, racial discrimination, or both.  POD denies the charges and has moved the court to enter summary judgment on its behalf.

## II. THE SUMMARY JUDGMENT STANDARD

Courts "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).  In making this determination, courts must view all evidence and draw all reasonable inferences in the light most favorable to the party opposing the motion.  *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).  The moving party bears the initial burden of informing the court of the basis for its belief that there is no genuine issue for trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

When a party bears the burden of proof on an issue, she "must establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in [her] favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis

ORDER – PAGE 2

omitted). When the nonmovant bears the burden of proof, the movant may demonstrate entitlement to summary judgment by either (1) submitting evidence that negates the existence of an essential element of the nonmovant's claim or affirmative defense, or (2) arguing that there is no evidence to support an essential element of the nonmovant's claim or affirmative defense. *Celotex*, 477 U.S. at 322–25.

Once the movant has made this showing, the burden shifts to the nonmovant to establish that there is a genuine issue of material fact such that a reasonable jury might return a verdict in its favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). Moreover, "[c]onclusory allegations, speculation, and unsubstantiated assertions" will not suffice to satisfy the nonmovant's burden. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc). Indeed, factual controversies are resolved in favor of the nonmoving party "'only when an actual controversy exists, that is, when both parties have submitted evidence of contradictory facts.'" *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 525 (5th Cir. 1999) (quoting *McCallum Highlands, Ltd. v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995)).

### III. KUTER HAS NOT ESTABLISHED A PRIMA FACIE CASE UNDER ADEA OR TITLE VII

**A. The *McDonnell Douglas* Burden-Shifting Framework Applies to Kuter's Claims**

Kuter first alleges that POD violated ADEA by basing its decision to terminate her on her age. "Under the ADEA, it is 'unlawful for an employer . . . to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect

to [her] compensation, terms, conditions, or privileges of employment, because of such individual's age.'" *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 141 (2000) (quoting 29 U.S.C. § 623(a)(1)). ADEA's protections apply to employees aged forty or over. 29 U.S.C. § 631(a). The plaintiff bears the burden of demonstrating but-for causation between her age and the defendant's decision to impose an adverse employment outcome. *Salazar v. Lubbock Cnty. Hosp. Dist.*, 982 F.3d 386, 389 (5th Cir. 2020).

Kuter also alleges that POD unlawfully dismissed her based on her race. "Title VII of the Civil Rights Act of 1964 prohibits the discharge of 'any individual' because of 'such individual's race.'" *McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 278 (1976) (quoting 42 U.S.C. § 2000e-2(a)(1)). "Its terms are not limited to discrimination against members of any particular race." *Id.* at 278–79. Thus, a white employee may make out a claim for racial discrimination under Title VII. *Id.* at 279.

A plaintiff can prove a claim under either ADEA or Title VII by use of circumstantial evidence alone. When a plaintiff does not produce direct evidence of discrimination, however, the *McDonnell Douglas* burden-shifting framework applies. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–803 (1973) (applying doctrine in Title VII suit in which plaintiff produced circumstantial evidence); *Squyres v. Heico Cos., LLC*, 782 F.3d 224, 231 (5th Cir. 2015) (analyzing circumstantial ADEA claim under *McDonnell Douglas*). Under this framework, the plaintiff must first establish a prima facie case of discrimination. To do so, the plaintiff must show that she falls within the protections of the statute, was qualified for the position she held, and suffered an adverse employment outcome. *Welsh v. Fort Bend Indep. Sch. Dist.*, 941 F.3d 818, 823 (5th Cir.

ORDER – PAGE 4

2019). Additionally, the plaintiff must show either disparate treatment by comparison to a similarly situated employee or that the defendant replaced the plaintiff with a new employee who does not come under the statute's protections. *Jenkins v. City of San Antonio Fire Dep't*, 784 F.3d 263, 268 (5th Cir. 2015) (Title VII); *Smith v. City of Jackson*, 351 F.3d 183, 196 (5th Cir. 2003) (ADEA).

Kuter does not allege, and the record does not disclose evidence of, direct discrimination on the part of POD. Thus, her case relies entirely on the development of circumstantial evidence. As set forth above, the *McDonnell Douglas* burden-shifting framework applies to circumstantial ADEA and Title VII claims. Further, Kuter states in her briefing that she does not allege disparate treatment. Therefore, she must establish replacement by an employee not covered by the relevant statute to establish a prima facie case. The Court now turns to the evidence in the record related to the issue of replacement.

### B. Kuter Fails to Raise a Genuine Issue of Fact as to Her Replacement

Uncontested facts allow Kuter to establish the first three elements. At the relevant time, ADEA's protections applied to Kuter based on her age; she can also qualify for protection under Title VII. Kuter had worked in the same role for over fifteen years, suggesting that her qualifications fit the job she performed. Finally, she suffered an adverse employment outcome when POD fired her.

POD argues, however, that the Court should enter judgment in its favor because Kuter has failed to carry her burden of placing the final element in genuine dispute. In her complaint, Kuter identified Grant as her replacement. Pl.'s Compl. ¶ 12. The parties agree that, at the time of her hiring, ADEA's protections did not apply to Grant based on her age.

ORDER – PAGE 5

Further, Grant is black and Kuter is white. POD contends, however, that Kuter has failed to identify any evidence in the record that Grant actually replaced her. The Court agrees.

### 1. Hiring Grant Did Not Constitute Per Se Replacement of Kuter.

— Kuter argues that, even if POD intended for Grant to have an HR-focused role, hiring her resulted in a replacement by reallocating a significant portion of Kuter's duties. Pl.'s Br. Resp. to Def.'s Mot. Summ. J. 7 [21]. Kuter admits, however, that at an earlier time during her tenure as POD's office manager, POD had employed another HR-focused staff member. Def.'s App. 18:10–13 [19]. Kuter neither alleges nor identifies evidence in the record to establish that the prior arrangement — using a dedicated HR employee — substantially diminished her role as POD's office manager. In fact, Kuter agreed with POD's partners that hiring another person to fill that role would enhance Kuter's ability to focus on her core managerial responsibilities. *Id.* at 18:3–9. Moreover, the Fifth Circuit has previously concluded that a replacement has not occurred where an employer redistributes a terminated employee's job functions among several preexisting employees. *See, e.g.*, *Griffin v. Kennard Indep. Sch. Dist.*, 567 F. App'x 294–95 (5th Cir. 2014). The Court finds this reasoning persuasive and applicable to the facts of this case. Thus, POD's hiring Grant, without more, did not result Kuter's replacement, and continuing to assume the HR responsibilities Kuter previously performed did not constitute a replacement. The Court turns next to Kuter's argument that, irrespective of POD's originally intentions, Grant's role ultimately expanded such that she effectively replaced Kuter.

### 2. Kuter Identifies No Direct Evidence that Grant Assumed Her Role.

— POD partner Dr. Matthew Yaeger testified that, following Kuter's dismissal, POD hired Tamara

ORDER – PAGE 6

Bell — not Grant — to take over the core managerial function that Kuter performed until her separation from POD. *Id.* at 56:16–57:3. For purposes of ADEA and Title VII Bell belongs to the same classes as Kuter. *See Id.* 39:6–40:8 (stating that Bell is older than Kuter and white). Kuter admitted in her deposition that she did not know whether Grant's role ever expanded to include responsibilities outside of HR, but she did state that she knew POD had hired Bell within weeks of her own termination. *Id.* at 18:17–19:12. Further, the idea that Grant's assumed Kuter's role conflicts with the uncontested fact that Grant lacked experience in a role comparable to Kuter's. Pl.'s App. 10:20–22; Def.'s Br. Supp. of Mot. Summ. J. 6. Thus, the only indication in the record regarding who replaced Kuter is the evidence that POD responded to her dismissal by instigating a search for a new officer manager and ultimately hired a woman belonging to the same classifications as Kuter for purposes of ADEA and Title VII.

      **3. *Kuter's Inferential Argument Fails to Raise a Fact Issue.*** — Kuter's prima facie case, therefore, relies on circumstantial evidence that Grant replaced her. Essentially, Kuter identifies two pieces of uncontested evidence and invites the inference that POD hired Grant to replace Kuter. First, Kuter notes that POD hired Grant, asked her to train Grant, and then fired her shortly thereafter; second, she points out that prior to her termination, POD gave Grant exclusive control over the office Kuter had previously used. Def.'s App. 13:23–14:9, 14:16–21.

      This thin reed of circumstantial evidence collapses under the weight of other uncontested evidence in the record. Tasking Kuter with training Grant made perfect sense given Kuter's expansive role within the practice. Further, the record shows that POD had

ORDER – PAGE 7

begun planning to make changes to its physical space to accommodate both Kuter and Grant over the long term. Finally, practical considerations best explain POD's decision to relocate Kuter.

POD's choice to delegate the responsibility of training Grant to Kuter does not arouse suspicion when considered in the context of her expansive role. The parties largely agree, based on their respective testimony, that Kuter played a key, high-level role in orchestrating POD's operations. Managers of all the departments (nursing, billing, etc.) within the practice reported to her, and she bore responsibility for working with the physicians and nurse practitioners to ensure that coverage would meet patient demands. Def.'s App. at 6:9–10, 6:25–7:16 (Kuter's testimony); Pl.'s App. 23:3–14 (Dr. Jim Watkins's testimony). Based on Watkins's contention that all employees reported to Kuter, the Court infers that the HR manager would also have reported to Kuter. It makes perfect sense, then, that POD would have asked Kuter to train her own subordinate. Moreover, training Grant allowed Kuter to define the scope of Grant's role with minimal input from POD's partners. *See* Def.'s App. 14:5–9. The obvious, legitimate reasons why POD would have delegated Grant's training to Kuter renders specious her attempt to invite the inference that POD harbored a malignant intent from the beginning.

The evidence also does not suggest that POD intended to fire Kuter at the time it hired Grant. POD took actions inconsistent with an intention to replace Kuter in the near term. Kuter testified that, before moving Grant into Kuter's old office, POD President, Dr. Watkins, spoke to Kuter about remodeling the practice's space to create a new office for Kuter to use. *Id.* at 15:12–16:14. Moving Grant into that office also made sense for

ORDER – PAGE 8

practical reasons: POD kept all of its personnel files there. Kuter acknowledged that the personnel records contain sensitive information and that POD had always restricted access to these records. *Id.* at 17:1–9. Hence, the record evidence shows both that POD contemplated permanent changes to accommodate both Kuter and Grant and that practical considerations drove the decision to locate Grant in the office Kuter had previously used.

      Viewed in its totality the record does not reflect a bona fide dispute as to whether Grant replaced Kuter. POD's hiring of Grant in a narrow HR role did not constitute a replacement of Kuter. No evidence exists to show that Grant's role expanded following Kuter's dismissal, but POD's testimony shows that it replaced Kuter with another person belonging to the same protected classes as Kuter. Finally, when viewed holistically, Kuter's argument that POD intended to replace her with Grant — relying as it does on individual pieces of circumstantial evidence taken in isolation — fails to raise a genuine fact issue. Accordingly, the Court holds that Kuter has not established a prima facie case under ADEA or Title VII, entitling POD to summary judgment on these claims.

## CONCLUSION

For the forgoing reasons, the Court concludes that no genuine issue of material fact exists as to an element of Kuter's prima facie case under both ADEA and Title VII. Accordingly, the Court grants summary judgment to POD on these claims.

Signed October 18, 2021.

_____
David C. Godbey
United States District Judge

ORDER – PAGE 10